"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MARIA GUZMAN, | Case No. EDCV 05-00767-MLG |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | |
| Defendant. | |

Plaintiff Maria Guzman ("Plaintiff") seeks review of the Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB"). For the reasons stated below, the Commissioner's decision should be affirmed and this action should be dismissed with prejudice.

**I.  Factual and Procedural Background**

Plaintiff was born on December 21, 1955. (Administrative Record ("AR") at 20, 66). She completed high school in Mexico and has past relevant work experience as a cleaner (home restoration services),

laminator (printed circuit boards), and printer/screen assembler (electronic components). (AR at 20, 33-34).

Plaintiff filed an application for DIB on August 5, 2002, alleging that she had been disabled and unable to work since September 18, 2000, due to diabetes, a back injury, pain in her hands, arms and legs, and a mental impairment. (AR at 20, 66-69, 101, 150). The Social Security Administration denied this application at the initial and reconsideration levels. (AR at 42-45, 50-53).

At Plaintiff's request, an administrative hearing was held before Administrative Law Judge David L. Wurzel (the "ALJ") on April 19, 2004. (AR at 372-449). Plaintiff, who was represented by counsel, testified at the hearing. (AR at 374-426). A vocational expert also testified. (AR at 426-48).

On July 30, 2004, the ALJ issued a decision finding that Plaintiff was not under a disability, as defined in the Social Security Act. (AR at 19-37). The ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of disability. (AR at 20). The ALJ found that Plaintiff suffers from a combination of impairments that are considered "severe," including: non-insulin dependent diabetes mellitus; degenerative disc and joint disease, lumbosacral spine and old compression fractures at T-12 and L-2, without spinal cord compression; early glaucoma; blepharitis; and depressive disorder, NOS. (AR at 25). The ALJ concluded that Plaintiff's impairments did not meet or equal one of the of the listed impairments in Appendix 1, Subpart P, Regulations No. 4 ("the Listings"). (AR at 26). The ALJ assessed Plaintiff with a residual functional capacity to perform unskilled, sedentary work with a sit-stand option at will. (AR at 26). The ALJ further found that Plaintiff: is precluded from

climbing ladders, ropes or scaffolds except in an emergency; is unable to perform work involving concentrated exposure to dangerous moving machinery, electric shock, radiation and unprotected heights; is limited to occasional climbing of ramps and stairs, balancing, stooping, crouching, kneeling, and crawling; must use a cane to walk more than 20 steps; and is restricted to performing unskilled work with no close or frequent interpersonal contact with supervisors, co-workers, or the public. (AR at 26). Based on this residual functional capacity, the ALJ determined that Plaintiff was unable to perform any of her past relevant work. (AR at 34). However, considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined that there are a significant number of jobs in the national economy that Plaintiff is capable of performing, including work as a stuffer (sporting goods assembler), final assembler, and lens inserter. (AR at 35).

On June 21, 2005, the Appeals Council denied review. (AR at 5-8). Therefore, the ALJ's decision became the final decision of the Commissioner. (AR at 5). Plaintiff then commenced this action for judicial review.

The parties filed a Joint Stipulation on April 17, 2006. Plaintiff contends that the ALJ erred by failing to give proper weight to the opinions of Herbert Marshak, M.D. and Roland Chabot, Ph.D. concerning her mental impairment, and failing to properly evaluate Plaintiff's subjective complaints. Plaintiff seeks remand for payment of benefits or, in the alternative, remand for further development of the record. (Joint Stipulation at 17). The Commissioner requests that the ALJ's decision be affirmed. (Joint Stipulation at 17). The Joint Stipulation has been taken under submission without oral argument.

**II. <u>Standard of Review</u>**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). It is more than a scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-721.

**III. <u>Discussion</u>**

    **A.   Plaintiff's Mental Impairment**

In October 2001, psychiatrist Herbert Marshak, M.D. and psychologist Roland Chabot, Ph.D. conducted an Initial Comprehensive Medical Legal Evaluation of Plaintiff. (AR at 229-38). Plaintiff claimed that she was suffering from physical and emotional impairments as a result of a work-related injury. (AR at 230). After administering a series tests, mental status evaluation, and interview, Drs. Marshak and Chabot diagnosed Plaintiff with depressive disorder NOS and

generalized anxiety disorder. (AR at 237). Drs. Marshak and Chabot considered Plaintiff to be temporarily totally psychologically disabled and recommended that Plaintiff participate in weekly stress management therapy and undergo a medication evaluation. (AR at 238). In March 2002, Drs. Marshak and Chabot completed a Permanent and Stationary Comprehensive Medical Legal Evaluation on Plaintiff's behalf. (AR at 239-47). They changed Plaintiff's diagnosis to major depressive disorder, single episode severe and assessed Plaintiff's work-related limitations. (AR at 245-46). They found that Plaintiff had "slight to moderate" impairments in the ability to comprehend and follow instructions, perform simple and repetitive tasks and maintain a work pace appropriate to a given work load, and "moderate to severe" impairments in the ability to perform complex or varied tasks, relate to others beyond giving and receiving instructions, influence people, make generalizations, evaluations or decisions without immediate supervisors, and accept and carry out responsibility for directions, control and planning. (AR at 246). Plaintiff contends that the ALJ erred in his evaluation of Dr. Marshak's and Chabot's opinion because they were treating doctors. The Commissioner disagrees. Even assuming, *arguendo*, that Drs. Marshak and Chabot were treating doctors, the ALJ's evaluation of Plaintiff's mental impairment is still supported by substantial evidence.

An ALJ may disregard a treating physician's opinion whether or not that opinion is contradicted. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)(ALJ may credit opinion of nontreating source based on independent clinical findings over treating physician's opinion)(citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). If the treating physician's opinion is contradicted, and the opinion of a

non-treating source is based upon independent clinical findings that differ from those of the treating physician, the opinion of the non-treating source may itself be substantial evidence on which the ALJ may rely. *Andrews*, 53 F.3d at 1041. Where, on the other hand, a non-treating source's opinion contradicts that of the treating physician, but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence. *Id.*; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

In the Decision, the ALJ reviewed the reports of Drs. Marshak and Chabot. (AR at 24, 27-28, 30). Although the ALJ accepted their finding that Plaintiff was impaired in the ability to interact with supervisors, co-workers, and the public, the ALJ rejected the remainder of their opinion. (AR at 30). In so doing, the ALJ relied on the findings of examining psychiatrist Reynaldo Abejuela, M.D. (AR at 24-25, 28, 30, 337-42). Dr. Abejuela conducted a complete psychiatric evaluation of Plaintiff in September 2003. (AR at 337-42). Dr. Abejuela diagnosed Plaintiff with depressive disorder, NOS, but concluded that Plaintiff did not have any severe work-related limitations due to an emotional impairment. (AR at 340, 342). Specifically, Dr. Abejuela found that Plaintiff was not severely limited in the following areas: daily activities; social functioning; concentration, persistence and pace; the ability to understand, carry out, and remember simple and complex instructions; the ability to respond appropriately to co-workers, supervisors, the public and work situations; and the ability to deal with changes in a routine work setting. (AR at 341-42). The ALJ was

allowed to credit Dr. Abejuela's opinion over the opinions of Drs. Marshak and Chabot because Dr. Abejuela's based his opinion on independent clinical findings. *See Andrews*, 53 F.3d at 1041.

Plaintiff claims that Dr. Abejuela's opinion does not provide support for the ALJ's Decision because Dr. Abejuela only reviewed the reports of two workers' compensation doctors, Dr. O'Malley and Dr. Guy. (Joint Stipulation at 6). Plaintiff's argument is belied by the record. Dr. Abejuela stated that in addition to reviewing Dr. O'Malley's and Dr. Guy's reports, he reviewed the "rest of the medical evidence" and background information. (AR at 338).

The ALJ also provided specific, legitimate reasons to support his rejection of Dr. Marshak's and Dr. Chabot's opinion. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). For example, the ALJ noted that the extreme limitations assessed by these doctors were inconsistent with the minimal findings in the record. (AR at 28); *see Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (explaining that the ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). Further, the ALJ found that Dr. Marshak's and Dr. Chabot's opinion appeared to be based on Plaintiff's subjective complaints, which the ALJ properly discounted. (AR at 28); *Morgan*, 169 F.3d at 602 (explaining that "[a] physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted"); *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Thus, the ALJ provided sufficient reasons for rejecting Dr. Marshak's and Dr. Chabot's opinion.

Next, Plaintiff argues that the ALJ failed to fully and fairly develop the record because he did not obtain testimony from a medical

expert. (Joint Stipulation at 4). However, Plaintiff fails to present any evidence or argument suggesting that the record was ambiguous or otherwise inadequate to allow for proper evaluation of Plaintiff's impairments and the medical evidence. Therefore, the ALJ was not obligated to supplement the record with the testimony of a medical expert. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)(explaining that an ALJ has an obligation to develop the record further only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence); *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)(ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry").

Plaintiff also claims that she was deprived of a fair hearing because the ALJ did not obtain the services of an interpreter. (Joint Stipulation at 3-4). This claim is without merit. While Plaintiff was not the most articulate witness, the ALJ concluded that Plaintiff was literate and able to communicate effectively in English. (AR at 36). The ALJ's conclusion was supported by the record. Over 50 pages of the transcript reveal that Plaintiff was able to answer questions posed by the ALJ and her own attorney in English. (AR at 374-426). Plaintiff also displayed her facility in English during her examination with Dr. Abejuela. Dr. Abejuela expressly found that Plaintiff spoke English and did not need an interpreter. (AR at 337). Finally, neither Plaintiff nor her attorney requested assistance from an interpreter. *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)(explaining that it is a claimant's duty to establish that she is disabled).

///

**B.   Plaintiff's Subjective Complaints**

Once a claimant produces objective medical evidence of an underlying impairment which could reasonably be expected to produce some degree of pain or other symptoms, the ALJ may reject subjective symptom testimony only by offering specific, clear and convincing reasons for doing so, in the absence of any evidence of malingering. *Smolen*, 80 F.3d at 1281. If the ALJ finds that a claimant's testimony regarding the degree of pain and limitations is unreliable, the ALJ must "specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan*, 169 F.3d at 599; *Lester*, 81 F.3d at 834. Resolving conflicts in the testimony and determining questions of credibility are functions solely of the Commissioner. *Morgan*, 169 F.3d at 599.

In this case, the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's testimony, with citations to the evidence. Although Plaintiff produced objective medical evidence to support some degree of symptoms, the ALJ cited Plaintiff's tendency to exaggerate her symptoms. (AR at 32). In particular, the ALJ found that Plaintiff's claimed limitations were inconsistent with her demonstrated abilities on examination. (AR at 32). In August 2003, consultative orthopedic surgeon Laurence Meltzer, M.D. reported that although Plaintiff repeatedly claimed that she could not perform various activities due to pain, her actions showed that she was in fact able to perform the requested activities. (AR at 326). For example, when asked to walk on her heels and toes, Plaintiff claimed that she was unable to do so. (AR at 327). During her attempts to walk on her heels and toes, she flopped to the right and left and held on to the wall for balance. (AR at 327). Dr. Meltzer reported, however, that Plaintiff was actually

able to walk with a normal heel-toe gait. (AR at 327)). And, although Plaintiff claimed that she needed to use a cane for ambulation, she was able to walk with a normal heel-toe gait without shifting her weight to the cane. (AR at 325, 327). Thus, the ALJ properly relied on the inconsistencies between Plaintiff's claims of extreme limitations and her demonstrated ability to perform various activities despite her impairment. *See Light v. Social Security Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)(inconsistencies between testimony and conduct may be considered in weighing a claimant's credibility).

The ALJ also noted that Plaintiff's complaints of debilitating pain were undermined by the fact that she was not taking any medication for pain when she was examined by Dr. Meltzer in August 2003. (AR at 33, 325). At the hearing, Plaintiff stated that she began taking Ibuprofen and Tylenol with codeine in December 2003. (AR at 399-400). Plaintiff's relatively limited and recent use of non-narcotic medications are valid factors supporting the ALJ's excess pain evaluation. *See Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

Further, the ALJ found that Plaintiff's general demeanor as a witness at the hearing was poor. (AR at 33). In particular, the ALJ cited Plaintiff's feigned inability to speak English and inconsistencies in her statements about her ability to read and write in English. (AR at 32). *Thomas v. Barnhart*, 278 F.3d 947, 960 (9th Cir. 2002)(holding that claimant's demeanor at the hearing was a proper basis for rejecting claimant's subjective complaints); *see also Light*, 119 F.3d at 792 (upholding ALJ's finding that a claimant generally lacks credibility as a permissible basis for rejecting claimant's testimony).

///

The examples cited above constitute specific, clear and convincing reasons for discrediting Plaintiff's testimony and those reasons were supported by substantial evidence.  Consequently, Plaintiff's argument that the ALJ improperly considered her subjective complaints is rejected.

**IV. Conclusion**

Based upon the applicable legal standards, the Court finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED:   May 30, 2006              */S/ Marc L. Goldman*
                                   _____
                                   MARC L. GOLDMAN
                                   United States Magistrate Judge